ENOCH R. MUDGE and others *v.* THE COMMISSIONERS OF THE EXCHANGE AND BANKING COMPANY OF NEW ORLEANS, and THE ST. CHARLES HOTEL COMPANY.

There is a strong analogy between the *cessio bonorum* of an insolvent and the administration of the surrendered property by his syndics, and the liquidation of banking corporations, by commissioners, under the acts of 14 and 26 March, 1842. In both cases, the property vests, in effect, in the creditors, and the former owner has no longer any right or interest, but that of receiving the *residuum* after the payment of all the debts, and, for that purpose, of coercing a final settlement by the commissioners. Neither the insolvent debtor, nor the stockholders of the insolvent corporation, can appear in court to control the administration of the assets.

The legislature have power to provide for the distribution among the creditors of the property of insolvent corporations, whose charters have been forfeited; and the acts of 14 and 26 March, 1842, for the liquidation of banks, are insolvent laws applicable to such corporations.

The act of 25 March, 1844, incorporating the St. Charles Hotel Company, is not inconsistent with any provision of the constitution of the State, or of the United States. It does not impair the obligation of any contract, nor destroy any vested

Mudge and others v. Com'rs of the Exchange and Banking Company and others.

right; nor did the legislature, in its enactment, exercise any other than legislative power.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*Josephs* and *Grymes*, for the appellants.

*Barker* and *Benjamin*, for the defendants.

BULLARD, J. The petitioners represent that they are either stockholders of the Exchange and Banking Company, or its creditors. That in virtue of several acts of the legislature, that institution was duly put into forced liquidation by a judgment of the District Court of the First District, and that commissioners were appointed to liquidate said institution according to law. That as stockholders and creditors, all its property was and is vested in them, as stockholders, to the extent of their interest, and that, as creditors, said property forms the common pledge for the payment of their claims and demands. That, on the 25th March, 1844, the legislature passed an act incorporating a company by the name and style of the St. Charles Hotel Company, and did direct and enact that the said liquidating commissioners should transfer and convey to the said St. Charles Company, the building and lots composing the St. Charles Hotel, with all its furniture and appurtenances, which is of great value, and comprises nearly all the property of said corporation; and did direct that all the other property or assets should be sold. They represent that all the enactments and provisions of the said act touching the alienation and transfer of the property of the said bank, are repugnant to the constitution of the United States, and utterly null and void, and ought not to be carried into effect; that it invades the rights of property, and takes from the stockholders of the said bank their lawful property, and vests it in others, not for any public purpose, but for the private benefit of the St. Charles Hotel Company, and deprives the creditors of the bank of their pledge, without providing any adequate, lawful, or valuable consideration or compensation. They pray that the St. Charles Hotel Company, by their president, and the liquidating commissioners may be cited, and that the act of the legislature may be declared unconstitutional and void, and that the commissioners may be ordered to retain the said property and assets, and to proceed with the administra-

tion thereof. They pray for damages, and for an injunction until the further order of the court. An injunction was accordingly granted.

A majority of the commissioners answer, that they have never consented to, nor refused to comply with the requisitions of the act of the legislature, but they require that the parties try their own rights, and the question, whether they, the commissioners, have the right to transfer the property of the stockholders, as required by the charter of the St. Charles Hotel Company.

The third commissioner answers, that he has always been ready and willing to comply with the law creating the St. Charles Hotel Company, and he submits the question to the decision of the court.

The St. Charles Hotel Company answer, that the Exchange and Banking Company was totally insolvent and unable to pay its liabilities. That it was put in liquidation according to law, and commissioners appointed to carry on the liquidation. That the system of liquidation established by law, being found to be expensive, insufficient, and destructive of the interests of the creditors, a large majority of them presented a petition to the legislature, praying that the assets of the Company should be administered by the creditors themselves, and that the said creditors should be incorporated, and that the assets, consisting almost entirely in the premises known as the St. Charles Hotel, should be transferred to them, thus united as corporators under the style of the St. Charles Hotel Company. That, accordingly, the act in question was passed, which, they allege, is valid and binding, providing especially for the liquidation of an insolvent corporation, divests no property of the stockholders for any other purpose than that of paying their debts, and is in no manner repugnant to the constitution of the United States, or of Louisiana. That the bank being utterly insolvent, the stockholders have no interest whatever in the manner of dividing its assets among the creditors. That none of the creditors are injured by said act, but their interests and rights fully protected. The answer contains other matters which it is unnecessary to set forth, as the case turned, in the court below, altogether upon the constitutional validity of the act incorporating the new com-

pany, and that is the only question which has been argued in this court. That act was pronounced constitutional by the Commercial Court, and the plaintiffs appealed.

We have had occasion more than once to pronounce upon the analogy which exists between cases of a surrender by insolvent debtors to their creditors and the administration of the property by them surrendered by syndics, and the liquidation of corporations put in liquidation under the acts of 1842, and administered by commissioners. In both, the property vests, in effect, in the creditors, and the former owner has no longer any right or interest, except that of receiving such *residuum* as may be left after the payment of all the debts. It follows, that neither the insolvent debtor, nor the stockholders of an insolvent corporation, have any faculty to appear in court to control the administration of the assets. Their title is divested, and they retain no other right than to receive a *residuum*, and, for that purpose, perhaps, to coerce a final settlement by the commissioners. Such of the plaintiffs, therefore, as base their right to sue on the fact that they were stockholders, cannot maintain their action ; and our attention must be confined to the case as it relates to the creditors of the Exchange and Banking Company.

And this brings us to the enquiry, what is the true character of the new corporation, styled the St. Charles Hotel Company? The preamble to the act of incorporation contains the key to its construction. It is recited that certain creditors of the Exchange Bank have represented that, in their opinion, the interest of the creditors of said bank imperiously requires that the St. Charles Hotel, which comprises a large portion of the value of the assets of the said bank, should be divided into shares of small amounts, and sold at public auction, payable in the obligations of the said bank. To carry out these views the new corporation was created, with a stock divided into twenty thousand shares, estimated nominally at twenty-five dollars per share. Twelve thousand shares are to be handed over to the commissioners for liquidating the bank, to represent the hotel and appurtenances, which is to be transferred to the new corporation, subject to its liens and incumbrances ; and the other eight thousand shares are to be sold to pay off the incumbrances, and for carrying into

effect the objects of the incorporation. It is made the duty of the liquidating commissioners to sell the remaining assets of the bank, payable in the obligations of said bank, and, immediately after the sale of the other assets, to dispose of said twelve thousand shares to the highest bidder, after certain public notices, not more than three thousand shares in any one month, and not more than one hundred shares in a lot, payable in the obligations of the Exchange and Banking Company, or specie, or in part of each, at the option of the purchaser; and it provides that the whole concerns of said bank shall be closed on or before the 1st of January, 1845, when the commissioners shall file their final *tableau*, on the homologation of which they shall be discharged. The hotel thus transferred to the new company is to be administered by directors chosen by the stockholders.

Thus the creditors have their choice to become stockholders in the new corporation, by purchasing stock, and giving in payment their claims against the bank, or to come in for their distributive share of the assets upon the final *tableau* of distribution, and thus receive their proportion of the assets, including the proceeds of the twelve thousand shares representing the hotel, which the commissioners are directed to sell.

We concur in the opinion expressed by our learned brother of the Commercial Court, that the power of the legislature to provide for the distribution of the property of insolvent corporations which have forfeited their charters, among the creditors, is undoubted, and in considering these acts for the liquidation of banks in no other light than as insolvent laws applicable to such corporations. If the legislature had authorized and directed the commissioners to sell the hotel in small shares, payable in claims against the bank, or in specie, so that each creditor could have purchased to the amount of his credit, or come in afterwards upon the *tableau* at his option, he could not have complained of any violation of vested rights, nor of the impairing of the obligation of his contract, any more than a creditor, in an ordinary *concurso*, when the property surrendered has been sold for the benefit of all the creditors, and each has an opportunity afforded him to receive his just share; and if he comes in

upon the *tableau*, he receives a part of the price of the property sold to make up the fund to be distributed.

But it is said that the property belonging to the bank has been, by legislative authority, declared to be the property of a new corporation, and that the legislature can exercise no such authority.

To this it must be remarked, that, in order to ascertain the true character of these enactments, all parts of the statute must be taken together. A critical examination will show, that the directors of the new corporation became essentially trustees for such of the creditors as choose to become stockholders by exchanging their claims against the bank for stock in the hotel company; that the price of the hotel is not limited, because the stock to be placed in the hands of the commissioners, although nominally at twenty-five dollars per share, may sell for more or for less, and may be purchased by the creditors themselves; and that the authority of the commissioners is not superseded, but that they are required to dispose of the assets, and make the distribution; and that, in substance, they sell the hotel in shares, the whole to be kept by the new directors, in trust for the new stockholders; and that the legislature reserves the right of repealing the act altogether.

Instead of the commissioners proceeding directly to sell the hotel in shares, for the more convenient distribution of its proceeds among the creditors, the legislature has chosen to adopt a more circuitous method, by interposing the machinery of a new corporation to co-operate with the commissioners. The result appears to us essentially the same. The policy or expediency of the measure is no question for us: our only enquiry is, has it impaired the obligation of any existing contract, or destroyed any vested right? or has the legislature, in the enactment of the statute, exercised judicial, or any other than legislative power?

The case, in every aspect, differs essentially from the celebrated and leading one of Dartmouth College, upon which the counsel for the appellants rely. In that case, an ancient and venerable institution, founded originally by private munificence, and deriving its corporate existence from the crown before the

Revolution, was, by an act of the legislature of New Hampshire, despoiled of its property and its franchises, which were conferred upon a new corporation, without any forfeiture declared by legitimate authority. That act was justly pronounced to involve a violation of an existing contract, and to be unconstitutional. 4 Wheaton, 640. In the present case, the original corporation was dissolved by judicial authority. Its effects, according to the existing laws, were to be disposed of by commissioners for the benefit of the creditors; and the act now under consideration was passed to facilitate the commissioners in selling, in shares, the principal piece of property, a large and valuable hotel, so as to make it available in the most advantageous manner, to pay the debts of the insolvent bank. We are not satisfied that it is unconstitutional; and it is only in a very clear case that we should think ourselves authorized to pronounce an act of the legislature void.

*Judgment affirmed.*